<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| JOSEPH ARUANNO, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 02-2446 (JBS) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| LYDELL SHERRER, et al., | : | |
| | : | |
| Respondents. | : | |

---

**APPEARANCES:**

Joseph Aruanno, <u>Pro</u> <u>Se</u>
STU Annex
CN 905
Avenel, NJ 07001

Michael J. Williams
Deputy Attorney General
Office of the Attorney General
Appellate Bureau
P.O. Box 086
Trenton, NJ 08625

**SIMANDLE, District Judge:**

Petitioner, Joseph Aruanno, filed the within petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Respondents have filed an Answer.  The Court has considered all submissions. For the reasons set forth below, the Petition will be denied.

### BACKGROUND

1.  <u>Factual Background</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the

appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will simply
reproduce the Appellate Division's factual recitation:

> At 5:30 p.m. on December 10, 1996, eight year old
> G.B. was playing on the front porch of her house in
> Wildwood.  A man, later identified as defendant, came
> onto the porch and thrust his hand down her pants
> touching her vaginal area.  When G.B. yelled "stop",
> the man left.  The identification evidence, defendant's
> confession, and the inferences which could be made from
> his attempted flight when arrested, if believed by the
> jury, was sufficient to prove defendant's guilt beyond
> a reasonable doubt.

(Respondents' Appendix "Ra" 5).

## 2.  Procedural History

In 1997, a Cape May County Grand Jury indicted Petitioner on
two counts, including: second degree sexual assault, contrary to
<u>N.J.S.A.</u> 2C:14-2b (count one); and third degree endangering the
welfare of a child, contrary to <u>N.J.S.A.</u> 2C:24-4a (count two).

Petitioner was tried by jury from May 18 to May 20, 1998 in
the Superior Court of New Jersey, Law Division, Cape May County
("Law Division").  The jury found the petitioner guilty of only
count one (second degree sexual assault).  On February 5, 1999,
Petitioner was sentenced to ten years imprisonment and community
supervision for life as a sex offender.

Petitioner appealed his conviction and sentence.  The
Superior Court of New Jersey, Appellate Division ("Appellate
Division") affirmed the conviction and sentence on October 9,
2001.  (Ra5; <u>State v. Aruanno</u>, A-4188-98T4, Oct. 9, 2001).  The
New Jersey Supreme Court denied Petitioner's petition for

certification on February 19, 2002.  See State v. Aruanno, 171
N.J. 338 (2002).

The instant petition was received on May 20, 2002 and filed
on June 25, 2002.  On July 22, 2002, and September 18, 2002,
Petitioner was advised of his rights pursuant to Mason v. Meyers,
208 F.3d 414 (3d Cir. 2000).  On December 19, 2002, Respondents
filed an Answer and the state court record.  On September 8,
2004, this matter was administratively terminated.  It was
reopened on April 12, 2005.  Petitioner has filed a motion for
counsel; two previous motions for counsel have been denied.[1]

## DISCUSSION

### A.   Petitioner's Claims.

Petitioner asserts the following arguments for habeas
relief:

1.   The weight of the evidence does not support his conviction.
2.   Ineffective assistance of counsel.
3.   The trial was "unfair."
4.   He was denied a speedy trial.
5.   Grand jury was improperly conducted.
6.   Proper appeal process was denied.
7.   The trial judge should have recused himself.
8.   "All rights and due processes" were denied.
9.   His sentence was excessive.

---

[1]  Besides the motions to appoint counsel, Petitioner asked
to amend his petition.  On March 26, 2003, this Court granted
Petitioner leave to file an amended petition.  He did not do so.
Petitioner also asked for time to hire counsel.  By Order dated
July 21, 2004, this Court stayed the case for 30 days to allow
Petitioner time to hire counsel.  He did not do so.  Therefore,
the Court is ruling on the petition as filed.

See Petition for Writ of Habeas Corpus, ¶ 12.

Petitioner has raised the instant claims before the New Jersey state courts.  Therefore, they are properly before this Court for a decision on the merits.  To the extent that Petitioner has not raised the claims before the state courts, this Court finds that they are meritless, and will excuse the exhaustion requirement.  See 28 U.S.C. § 2254(b)(1), (2).

**B.    Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment

4

of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id.</u> A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u> at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was

5

objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id. Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of correctness is not

unreasonable."   Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."   Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).   A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."   Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.   See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).   A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.   See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## C.   Petitioner's Claim Regarding Weight of the Evidence.

Petitioner claims that there was "no evidence, physical or technical" against him, and that "the weight of the 'alleged' evidence will not support a conviction.   It is clear there was no

7

confession or identification and worse yet that the state
fabricated both!" (Petition, Ground One).

A claim that the jury's verdict was against the weight of
the evidence is "essentially a matter of state law, and does not
raise a federal constitutional question unless the record is
completely devoid of evidentiary support in violation of
Petitioner's due process." Douglas v. Hendricks, 236 F. Supp.2d
412, 435-36 (D.N.J. 2002)(Walls, J.)(citation omitted).  A writ
should not issue unless "no rational trier of fact could have
found proof of guilt beyond a reasonable doubt." Id. at 436
(citations omitted).  As noted, factual determinations by the
trial court are presumed to be correct.  See Werts v. Vaughn, 228
F.3d 178, 186 (3d Cir. 2000).

In the instant case, the Appellate Division noted that a
reasonable jury could choose to believe the witnesses, and
Petitioner's own confession, and find the petitioner guilty of
the charges beyond a reasonable doubt.  (Ra5).  The Appellate
Division found that Petitioner's claims regarding weight of the
evidence were "clearly without merit."  After a review of the
record, this Court agrees with the state court's determination
that there was sufficient evidence to convict the petitioner of
the count for which he was found guilty.  The record is not
"devoid" of evidence with regard to the count.  As such, this
Court finds that no federal question of a due process violation

8

has been raised to warrant the issuance of a writ of habeas corpus.  In addition, the petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**D.**   **Petitioner's Ineffective Assistance of Counsel Claims.**

Petitioner argues in Ground Two of his Petition that he did not have the assistance of effective and competent counsel throughout his trial.  He states that:  "Throughout [my] case my attorneys proceed as they wanted, not as I asked.  No motions for trial, refused to obtain evidence in my favor.  Public Defenders refused to consult with me or address all issues.  All refused to interview people."  (Petition, Ground 2).  Petitioner raised this claim on direct appeal, and was directed to reassert the claim in a post-conviction relief petition, which he did not do.  (Ra5).

Petitioner also states that his "proper appeal process was denied," because his public defender refused to consult with him, and thus, "knew very little about [the] case."  He states that

9

his appellate counsel did not raise the "most critical issues."
(Ground 6).

In Strickland v. Washington, 466 U.S. 668 (1984), the
Supreme Court held that in order to establish that trial counsel
is ineffective, the petitioner must show that "counsel's
performance was deficient," in that "counsel made errors so
serious that counsel was not functioning as 'counsel' guaranteed
. . . by the Sixth Amendment," and "that the deficient
performance prejudiced the defense." Id. at 687.  In order to
establish prejudice, the defendant must show "a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." State v.
Fritz , 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at
694).  "In any case presenting an ineffectiveness claim, the
performance inquiry must be whether counsel's assistance was
reasonable considering all the circumstances." Strickland, 466
U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time. Because
> of the difficulties inherent in making the evaluation,
> a court must indulge a strong presumption that

10

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519 U.S. 1020 (1996).

Additionally, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. See Evitts v. Lucey, 469 U.S. 387 (1985). The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

In the instant case, Petitioner raised his ineffective assistance of counsel claims on direct appeal. The Appellate Division did not rule on the claims on the merits, but instead informed Petitioner that he would need to bring his claims in a

11

post-conviction relief motion before the trial court.  (Ra5).
Petitioner did not do so.

When a state prisoner fails to follow a state procedural
rule at trial, on appeal, or in a state PCR proceeding, and the
state court dismisses a federal claim on independent and adequate
state law grounds, a federal habeas court must utilize the "cause
and prejudice" test to determine if the claim could be
entertained.  See Wainwright v. Sykes, 433 U.S. 72 (1977);
Coleman v. Thompson, 501 U.S. 772 (1991).  The petitioner must
demonstrate either (a) good cause for the failure to follow the
rule of state procedure and actual prejudice resulting therefrom,
or (b) that a miscarriage of justice would result if the court
does not address the merits of petitioner's claims.  See id.

The Third Circuit has noted that in order to establish
"cause" for procedural default, the petitioner must "'show that
some objective factor external to the defense impeded counsel's
efforts to comply with the State's procedural rule.'"  Werts v.
Vaughn, 228 F.3d 178, 193 (3d Cir. 2000)(quoting Murray v.
Carrier, 477 U.S. 478, 488 (1986)).  Ineffective assistance of
counsel can constitute cause.  See id.; Murray, 477 U.S. at 488.
With regard to prejudice, the petitioner must show that he was
denied "fundamental fairness" at trial.  See id. (citing Murray,
477 U.S. at 494.

12

Alternatively, a federal habeas court may review a procedurally defaulted claim if failure to do so would result in a "miscarriage of justice." See id. This exception applies "in extraordinary cases, i.e., 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . .'" See id. (quoting Murray, 477 U.S. at 496).

In the instant claim, Petitioner has failed to show cause or prejudice, or that a miscarriage of justice has occurred in order for this Court to review his ineffective assistance of counsel claims. Petitioner has not advanced good cause for not following the state procedural rules, and doing as directed by the Appellate Division. Petitioner has also not demonstrated that he was prejudiced and that he was denied fundamental fairness at trial. Petitioner has also not shown that failure to review his ineffective assistance of counsel claim would result in a miscarriage of justice, i.e., that he is actually innocent.

Evidence at trial revealed that shortly after the incident, the victim's mother called police. The victim gave a description of her assaulter, and a search began. Petitioner was about two blocks away from the area of the assault when he was spotted by police officers. Once Petitioner spotted one of the officers, he quickened his pace and broke into a slow jog. The officer approached him and Petitioner asked why he was being stopped and stated that he did nothing wrong. The officer told him that he

13

fit the description of an individual involved in an incident a few blocks away, and read Petitioner his rights. The victim was driven to the scene, and although she could not positively identify Petitioner at first due to his positioning showing only his profile, the victim was able to identify Petitioner after the Petitioner was turned to face her. The victim began to shake after the identification. This identification occurred in less than ten minutes from the time the police received the call from the victim's mother. Testimony revealed that the identification occurred approximately a half-hour after the attack.

Petitioner was told he was under arrest, and began to run in an attempt to escape. He was finally tackled to the ground by officers and handcuffed. During a police interview in which Petitioner waived his rights, Petitioner stated that he was sorry for what had happened to the victim, and cried. He nodded when asked if he had touched the victim. He said he would sign a confession, but would not provide details of the assault.

At trial, the victim could not positively identify Petitioner, as he had changed his appearance, but others identified him as the person who was arrested the night of the assault.

Prior to trial, Petitioner moved the court to proceed pro se. Trial transcripts reveal that he was disrespectful and belligerent. The court denied the request, as the case was

14

already old.  Petitioner's attorney revealed that Petitioner had
not been cooperating with the investigation of the case, stating
that he didn't want to try the case, didn't want his attorney
representing him, and kept saying that he needed different
representation, and "a dream team" to represent him.  (Rall).

Once trial proceeded, the State produced as witnesses the
victim, the victim's mother, and various police officers.
Petitioner's counsel effectively cross-examined the witnesses to
attempt to undermine their credibility.  The jury chose to
believe the witnesses, at least with regard to the sexual assault
count; however, this does not provide evidence of ineffective
assistance of counsel.[2]

Based on the record provided, Petitioner has not
demonstrated that he was denied fundamental fairness at trial, or
that a miscarriage of justice will have occurred due to the
procedural bar on review of his ineffective assistance of counsel
claim.  Thus, the Court will not grant habeas relief on these
claims.

---

[2]  The Court notes that even a cursory review of the merits
of the claims reveal that Petitioner has not demonstrated a
violation of Strickland, or that his counsel was ineffective.
Nor has Petitioner demonstrated that appellate counsel was
ineffective.  Petitioner's appellate counsel presented reasonable
issues on appeal, and presented a thorough brief advocating for
Petitioner.

**E.**   **Petitioner's Unfair Trial, Denial of All "Due Processes" Claims, and Claim Regarding Trial Judge Recusal.**

Petitioner claims that his trial was "filled with structural defects," that he was not allowed to file motions or subpoena witnesses, that the state withheld evidence in his favor, the judge misled the jury, the prosecutor made false statements, and the jury found him guilty before trial. (Petition, Ground 3). He also claims that his due process and "all" rights were violated "every step of the way." (Petition, Ground 8). Petitioner also argues that the trial judge should have recused himself due to the fact that "he was in denial and became angry, then continued to violate me worse. Then I filed complaints and a lawsuit and he took that personal." (Petition, Ground 7).

Petitioner raised these arguments on direct appeal in a pro se letter brief, and his claims were found to be "clearly without merit." (Ra5).

It has been held that federal courts must afford the states deference in their determinations regarding evidence and procedure. See Crane v. Kentucky, 476 U.S. 683, 690 (1986)(stating "we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted"). It is well-established that "a state court's misapplication of its own law does not generally raise a

16

constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

Assuming, arguendo, that the trial judge made errors under state law, a state's misapplication of its own law may constitute a violation of due process only in "rare" cases.  See id. ("when that misapplication has the effect of depriving a person of life, liberty, or property without due process of law in violation of the Fourteenth Amendment, the resulting federal constitutional error can be corrected by a federal habeas court").  Evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial."  Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir.), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or is an omission inconsistent with the

17

rudimentary demands of fair procedure." <u>Hutchins</u>, 1991 WL 167036
at *4 (citing <u>United States v. De Luca</u>, 889 F.2d 503, 506 (3d
Cir. 1989), <u>cert. denied</u>, 496 U.S. 939 (1990))(other citations
omitted).  The Supreme Court has further stated that "an
otherwise valid conviction should not be set aside if the
reviewing court may confidently say on the whole record that the
constitutional error was harmless beyond a reasonable doubt."
<u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681 (1986).  An error is
not harmless if "it aborts the basic trial process or denies it
altogether." <u>Hutchins</u>, 1991 WL 167036 at *5 (citing <u>Rose v.
Clark</u> , 478 U.S. 570, 578 n.6 (1986)).

In this case, Petitioner's conclusory statements are not
sufficient to warrant habeas relief.  A review of the record
finds that Petitioner was not denied due process, and that a
proper trial was conducted. Petitioner was treated fairly, and
there was sufficient evidence to find him guilty of the sexual
assault charge.  The fact that Petitioner disagrees with the
verdict - at least the verdict of guilt on the sexual assault
charge as opposed to the verdict of acquittal on the endangering
charge - is not sufficient to warrant habeas relief based on
conclusory allegations.

Petitioner may be attempting to argue that even if any one
of the errors complained of do not warrant a new trial, the

18

accumulation of errors was so great as to deny Petitioner a fair trial. Such an argument here would be unavailing.

Even if none of Petitioner's claims on its own amounts to a constitutional violation, the "cumulative effect of the alleged errors may violate due process." Sullivan v. Cuyler, 631 F.2d 14, 17 (3d Cir. 1980); see also Douglas v. Hendricks, 236 F. Supp.2d 412, 436 (D.N.J. 2002)(Walls, J.)(stating that no cumulative error occurred when the trial was fair and verdict supported by sufficient evidence); Pursell v. Horn, 187 F. Supp.2d 260, 374 (W.D. Pa. 2002)("That the reliability of a state criminal trial can be substantially undermined by a series of events, none of which individually amounts to a constitutional violation, is an idea that has been accepted by nearly every federal court to have addressed the issue.").

This Court finds that Petitioner has not demonstrated that aggregated trial errors rendered his trial unfair.  There was sufficient evidence produced at trial that supported the verdict rendered by the jury.  Therefore, this ground for habeas corpus relief will be denied.

**F.    Petitioner's Claim Regarding Denial of Speedy Trial.**

Petitioner claims that his right to a speedy trial was violated because his "trial was postponed for evaluations that were not needed, and again so the prosecutor could go on vacation when the law states this type of crime is to be tried as soon as

19

possible.   The prosecution and state's undue delays resulted in a prejudicial situation which prohibited my ability to have a fair trial."   (Petition, Ground 4).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."   U.S. CONST. amend. VI.   In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set forth four guidelines to determine whether the Sixth Amendment's guarantee of a speedy trial has been violated:   (1) the length of the delay; (2) the reason for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant.   See id. at 530; see also United States v. Dent, 149 F.3d 180, 184 (3d Cir. 1998), cert. denied, Dent v. United States, 525 U.S. 1085 (1999).

In the instant case, the petitioner has not demonstrated facts or evidence to support any of these four factors. Petitioner was indicted in January 1997, and tried in May 1998. Assuming, arguendo, that a sixteen-month delay is lengthy, the petitioner has not shown that he has been prejudiced by this delay, or that the delay was unreasonable.   Petitioner has not asserted his right to a speedy trial at any time in the state courts.   Therefore, he fails to demonstrate that his Sixth Amendment right to speedy trial has been violated, and his habeas claim is without merit.

**G.**   **Petitioner's Claim Regarding the Grand Jury.**

Petitioner claims that the grand jury proceedings in his case were improperly conducted.  He states that "the state withheld evidence and made false statements.  They did not present exculpatory evidence.  They refused to allow me to attend.  All this resulted in invalid indictments!"  (Petition, Ground 5).  Petitioner vaguely presented this issue to the Appellate Division, which found the claim to be "clearly without merit."  (Ra5).

Any errors in the issuance of the indictment are errors of state law, precluding habeas relief.  See Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).  New Jersey state law requires all objections based on defects in the indictment to be raised prior to trial.  See N.J. Ct. R. 3:10-2(c).  New Jersey state law also mandates that the proceedings be held in secrecy, see N.J. Ct. R. 3:6-7, and that only the jurors, prosecuting attorney, clerk, and witnesses are permitted to attend the grand jury sessions, see N.J. Ct. R. 3:6-6.

Petitioner's bare allegations fail to raise a constitutional violation, and do not demonstrate that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or

21

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**H.   Petitioner's Claim Regarding Sentence.**

Petitioner argues that his sentence was excessive.  However, a federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  See Grecco v. O' Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  Ewing v. California, 538 U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has identified three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment:  "(1) the

22

gravity of the offense and the harshness of the penalty; (ii) the
sentences imposed on other criminals in the same jurisdiction;
and (iii) the sentences imposed for commission of the same crime
in other jurisdictions."   Solem v. Helm, 463 U.S. 277, 292
(1983).   More recently, Justice Kennedy has explained that Solem
does not mandate comparative analysis within and between
jurisdictions, see Harmelin v. Michigan, 501 U.S. 957, 1004-05
(Kennedy, J., concurring in part and concurring in judgment), and
he has identified four principles of proportionality review--"the
primacy of the legislature, the variety of legitimate penological
schemes, the nature of our federal system, and the requirement
that proportionality review be guided by objective factors"--that
"inform the final one: The Eighth Amendment does not require
strict proportionality between crime and sentence.   Rather, it
forbids only extreme sentences that are 'grossly
disproportionate' to the crime,"   id. at 1001 (citation omitted)
quoted with approval in Ewing, 538 U.S. at 23.   Here, Petitioner
was convicted of one count of second degree sexual assault and
was sentenced to ten years imprisonment.   Any sentencing error
that may have occurred is a matter of state law and does not rise
to a level of disproportionality that violates the Eighth
Amendment.   As the sentencing issue raised by Petitioner is a
matter of state law, and because the Court finds no
constitutional violation, this claim must be denied.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.  Petitioner's pending motion for counsel is denied as moot.

An appropriate Order accompanies this Opinion.


Dated: Dec. 27, 2005          _JEROME B. SIMANDLE_
                              JEROME B. SIMANDLE
                              United States District Judge